

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
*ATTORNEY GENERAL*

AUSTIN 11, TEXAS

February 12, 1949.

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-769.

Re: Existence and re-
lease of inheritance
tax lien under sub-
mitted facts.

Dear Sir:

You have requested the opinion of the Attor-
ney General as to questions raised by Mr. Jack W. Frost,
Independent Executor of the Estate of Fred W. Frost,
deceased. The facts forming the basis of the Execu-
tor's questions are stated in his letter which you have
attached to your request together with a copy of a War-
ranty Deed from the Estate of L. J. Hart, deceased, to
Fred W. Frost; said Warranty Deed is dated February 10,
1939 and signed by Katherine Hart Edson, Independent
Executrix of the Estate of L. J. Hart.

We quote from Mr. Jack W. Frost's letter:

"Prior to his death, L. J. Hart owned
a part of Lots Nos. 4 and 5 in Block No. 1,
new City Block 401, within the corporate
limits of the City of San Antonio. . . .

"Mr. Hart died on July 8, 1938, testate;
. . .

"His will gives all his property of
whatever kind and character to his daughter
Katherine Hart Edson, and appoints her In-
dependent Executrix.

" . . .

"The inventory in the Estate of L. J.
Hart was filed on July 3, 1939. . . . Among

others, it lists the property in question
at a value of $7,000.00; and the total val-
ue of all property is listed as $623,241.35.
The list of claims filed, a part of the in-
ventory, lists two notes to Fred W. Frost,
one for $21,205.54 and one for $4,170.90.

"Subsequently, . . . the County Judge
. . . entered his order which was approved
by the State Comptroller, fixing the inher-
itance tax on this Estate. This order . .
. shows an appraised market value of $32,-
999.20, a statutory exemption of $25,000.00
and a net taxable value of $7,999.20. The
tax fixed is $79.99. . . . It will be as-
sumed that it has not been paid.

"Under date of February 10, 1939,
Katherine Hart Edson conveyed certain prop-
erties in the City of San Antonio to Fred
W. Frost, among which is an undivided one-
half interest in a part of Lots 4 and 5 in
said new City Block 401, particularly de-
scribed in said Deed. The Deed recites
'Ten Dollars and other valuable considera-
tion' paid by Fred W. Frost and the cancel-
lation and delivery to said Estate by Fred
W. Frost of a note for $16,000.00, executed
by L. J. Hart. . . . My files indicate that
the interest on this note was delinquent
and that the former note to which reference
is made in the inventory was probably made
for delinquent interest. The conveyance was
obviously made in cancellation of one of
the items of indebtedness as listed in the
inventory and list of claims.

" . . .

"I have made the Inheritance Tax Re-
turns in the Estate of Fred W. Frost and
have paid the full amount of the inherit-
ance tax due, . . . The undivided one-half
interest in the lots mentioned above was
listed in the inventory and in the Inherit-
ance Tax Return.

"I have sold this undivided one-half interest to Mr. Terrell Bartlett, . . . and his attorney has made a requirement that the apparent inheritance tax lien against the Estate of L. J. Hart, deceased, be released."

Mr. Frost then states that he is of the opinion "that the Executor of the L. J. Hart Estate has the right to transfer and convey this property in settlement of debts of the Estate and that, therefore, any apparent lien should be released by the Comptroller. If this were not so, no Estate, regardless of size, which had more debts than cash on hand, could ever be sold."

Article 7133, V. C. S., provides for a lien to secure the payment of inheritance taxes and reads as follows:

"A lien shall exist on all property subject to taxation under this law to secure the payment of all taxes, penalties and costs provided for in this chapter. All persons acquiring any portion of said property shall be charged with notice of the existence of all such unpaid taxes, penalties and costs, and of the lien securing their payment, which may be enforced in any suit brought for the collection of said taxes, penalties and costs."

Article 7131, V. C. S., prescribes the method of fixing the tax, provides that notice of the determination of the amount of the tax shall be given to the executor, administrator or trustee, and to the person to whom or for whose use the property passes, and further provides that "said tax shall be a lien upon such property from the death of the decedent until paid."

Article 7134, V. C. S., provides for foreclosure of said lien.

Inheritance taxes being "privilege taxes" levied upon the right of succession to property of a decedent, State v. Hogg, 123 T. 568, 72 W. (2d) 593,

a fortiori some beneficial interest of the decedent must be succeeded to before any tax can accrue. Nevertheless, the lien provided by Article 7133 is not specifically limited to the property which is eventually received from the decedent but exists by the terms of Article 7133 "on all property subject to taxation under this law." (Emphasis added.)

The Supreme Court of Washington has held that the state's lien for payment of inheritance taxes was not lost on realty sold by an executor to pay the expenses of administration and claims against the estate. In Re Kennedy's Estate, 61 Pac. (2d) 998. The Washington statute is similar in many respects to our statute, providing in part as follows:

"All property . . . which shall pass
by will . . . shall be subject to a tax as
provided . . . after payment of all debts
due by the decedent at the time of his
death . . . The inheritance tax shall be
and remain a lien on such estate from the
death of the decedent until paid."

The Washington statute had been construed (as has our statute, State v. Hogg, supra) as being a tax upon the right of succession rather than an estate tax, In Re Corbin's Estate, 107 Wash. 424, 181 Pac. 910; and it was contended that since the tax was only upon property passing to beneficiaries, the lien of the tax was likewise limited. The court was of the opinion that this conclusion was precluded by the reasoning in In Re Sherwood's Estate, 122 Wash. 648, 211 P. 734, which held that the federal estate tax was not a deductible expense because the statute did not specifically make it so. This result, said the court, was based on the power of the Legislature to declare, for purposes of the tax, what shall be deemed to have been received by those succeeding to the property, and to require the successor to pay a tax on that part which was never received but was devoted to other uses. The court said:

"Now if the Legislature may require,
as a condition to the succession, that
the beneficiaries pay a tax on that por-

> tion of the estate which does not pass
> but is consumed by chargeable expense, it
> may, upon the same consideration, provide
> that, notwithstanding the allowance of
> certain deductible expenses in the compu-
> tation of the tax, the amount of the tax
> when ascertained shall be a lien on the
> whole of the estate."

The court then added that there was no question in view
of the plain language of the statute above quoted that
the Legislature had declared the lien to exist upon the
whole of the estate.

In Walker v. Mann, 143 S.W. (2d) 152, error
refused, the Court of Civil Appeals for the Third Su-
preme Judicial District of Texas held that the amount
paid as Federal Estate taxes was not an authorized de-
duction in determining the amount of inheritance taxes
due under our statute. Thus in this state we have a
similar predicate and the reasoning of the Supreme
Court of Washington is applicable here. The Legisla-
ture having required as a condition to succession that
the tax may have to be paid on a portion of property
never received, the question is whether, upon the same
consideration, it has seen fit to secure the receipt
of this amount by a lien upon such property. We are
of the opinion that it has done so.

Article 7133 provides that the lien shall ex-
ist "on all property subject to taxation under this law
. . ." The property subject to taxation "under the law"
is, by the terms of Article 7117, V. C. S., "All proper-
ty within the jurisdiction of this State . . . and any
interest therein, including property passing under a
general power of appointment exercised by the decedent
by will, including the proceeds of life insurance to the
extent, etc., . . . which shall pass absolutely or in
trust by will, or by the laws of descent and distribu-
tion . . . or by deed, grant, sale or gift made or in-
tended to take effect in possession and enjoyment after
the death of the grantor or donor . . ."

Whenever property is transferred by any of
these enumerated methods the tax is imposed even though

the property is otherwise disposed of as where a contested will is probated by virtue of compromise agreement, Crane v. Mann, 162 S.W. (2d) 117, error refused, and even where the devise was made pursuant to a contract with the decedent, Sheppard v. Desmond, 169 S.W. (2d) 788.

The property here involved passed by the will of L. J. Hart to his daughter, was subject to tax under the plain terms of Article 7117, and therefore the lien attached thereto. Article 7131 declares that this lien shall exist "from the death of the decedent until paid." This being the mandate of the statute, only payment can extinguish the lien, and you are without authority to issue the release sought.

## SUMMARY

The State's lien to secure payment of inheritance taxes attached to the property passing by will at the death of the testator and persisted despite conveyance by executor to satisfy claims against the estate. Only payment can extinguish the lien, and the Comptroller has no authority to release the same. Articles 7117, 7131, 7133, 7134, V. C. S. In Re Kennedy's Estate, 61 P. (Ed) 998.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Marietta Creel
Mrs. Marietta Creel
Assistant

MC:mwb:bh

APPROVED

Fagan Dickson
FIRST ASSISTANT
ATTORNEY GENERAL